**Gabriel NUÑEZ, et al., Plaintiffs,**

v.

**The CITY OF SAN DIEGO, Susan Golding, in her official capacity as Mayor of the City of San Diego, Jerry Sanders, in his official capacity as Chief of Police for the City of San Diego, Defendants.**

**No. CV 95–321 H.**

United States District Court,
S.D. California.

Dec. 18, 1995.

Michael Marrinan, Adler & Marrinan, San
Diego, CA, Jordan C. Budd, American Civil

Liberties Union, San Diego, CA, Juanita Brooks, McKenna & Cuneo, San Diego, CA, Mark Pulliam, Latham & Watkins, San Diego, CA, for Plaintiffs.

James Chapin, Office of City Attorney, San Diego, CA, for Defendants.

John F. Duffy, Covington & Burling, Washington, DC, Robert Teir, American Alliance for Rights and Responsibilities, Washington, DC, Amicus.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

HUFF, District Judge.

On March 15, 1995, plaintiffs filed suit against the City of San Diego, the City's mayor, Susan Golding, and Chief of Police, Jerry Sanders. They challenge the constitutionality of Article 8, section 58.01 of the San Diego Municipal Code. Plaintiffs charge that the Ordinance violates their (1) Fifth and Fourteenth Amendment rights to due process, equal protection, privacy, and travel; (2) Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures; and (3) First and Fourteenth Amendment rights to free speech, association, and exercise of religion. Defendants and the American Alliance for Rights and Responsibilities, *amicus curiae*, oppose plaintiffs' challenge.

The parties have filed cross motions for summary judgment. Plaintiffs and defendants agree that the case presents a question of law—the constitutionality of the Ordinance. After reviewing the papers submitted by the parties and considering the oral argument presented to the court, the court finds that the Ordinance does not abridge plaintiffs' rights as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. First, the court finds the terms employed by the City in the Ordinance are not unconstitutionally vague.

Second, the statute is not overbroad. To the extent that overbreadth analysis is appropriate in this case, the court finds that the statute does not abridge directly any First Amendment freedoms. To the extent that a minor's speech or associational rights are restricted incidentally by the curfew, the court finds the limitation to be reasonable with regard to time, place and manner.

Third, the court finds that section 58.01 does not violate minors' rights to equal protection. Even assuming that minors possess the fundamental right to travel freely in the public forum, the court finds that the City of San Diego possesses a compelling interest in ensuring the welfare of minors. In particular, the City maintains a compelling interest in protecting juveniles from the dangers attendant to unsupervised late night activities, as well as protecting society from the dangers some minors pose during the same time. In pursuit of this end, the court finds section 58.01 narrowly tailored.

Fourth, the Ordinance does not infringe upon minors' Fourth Amendment freedoms from unreasonable searches and seizures. Fifth and finally, the curfew does not abridge the parental rights to raise their children autonomously. Although parents possess such rights, these liberty interests are not absolute. The court finds the limited intrusion into this area of constitutional protection to be reasonable and justified under the circumstances. Consequently, the court grants summary judgment on behalf of defendants and denies summary judgment as requested by plaintiffs.

### BACKGROUND

Article 8, section 58.01 of the San Diego Municipal Code sets a curfew for all persons under the age of 18. San Diego Municipal Code section 58.01 provides:

It shall be unlawful for any minor under the age of eighteen (18) years, to loiter, idle, wander, stroll or play in or upon the public streets, highways, roads, alleys, parks, playgrounds, wharves, docks, or other public grounds, public places and public buildings, places of amusement and entertainment, vacant lots, or other unsupervised places, between the hours of ten o'clock P.M. and daylight immediately following; provided, however, that the provisions of this section do not apply when the

minor is accompanied by his or her parents, guardian, or other adult person having the care and custody of the minor, or when the minor is upon an emergency errand directed by his or her parent or guardian or other adult person having the care and custody of the minor, or when the minor is returning directly home from a meeting, entertainment or recreational activity directed, supervised or sponsored by the local educational authorities, or when the presence of such minor in said place or places is connected with and required by some legitimate business, trade, profession or occupation in which said minor is lawfully engaged.

The Ordinance specifies that, in public places in San Diego, unsupervised minors may not "loiter, idle, wander, stroll or play" after 10 p.m. The Ordinance includes three statutory defenses to its mandate; unsupervised minors may use the public forum after 10 p.m. when (1) running an emergency errand as directed by his or her parent or guardian, (2) returning directly home from an activity sponsored by local educational authorities, and (3) the minor's presence at the particular location is connected with and required by the minor's job. SAN DIEGO MUNICIPAL CODE, ART. 8, § 58.01. A violation of section 58.01 constitutes a misdemeanor and subjects the offender to the jurisdiction of the Juvenile Court. SAN DIEGO MUNICIPAL CODE, ART. 8, § 58.01.2. In addition, a parent or guardian who permits his or her charge to violate the Ordinance may suffer a criminal conviction. SAN DIEGO MUNICIPAL CODE, ART. 8, § 58.01.1.

## DISCUSSION

Plaintiffs' attack on the municipal ordinance contains five essential elements. First, plaintiffs claim that the Ordinance infringes upon their First and Fourteenth Amendment rights; they assert that they maintain legitimate activities during the curfew hours and the curfew precludes the continuation of these legitimate activities. From this position, plaintiffs claim that the statute is unconstitutionally overbroad. Next, plaintiffs assert that the Ordinance violates mi-

nors' fundamental rights, and in so doing, fails under the Fourteenth Amendment's strict scrutiny analysis. In their third argument, plaintiffs challenge the Ordinance under the Fourth Amendment. They claim that the legislation subjects minors and near-minors to unreasonable searches and seizures in contravention of the Constitution's protection. Fourth, plaintiffs who are parents of minors argue that the Ordinance transgresses their privacy rights as parents. Fifth and finally, plaintiffs challenge the Ordinance as being void for vagueness.

Preliminarily, the court notes that plaintiffs challenge the Ordinance on its face. They neither assert nor submit evidence regarding an unlawful enforcement of the statute. In fact, plaintiffs agree that the court should look past the enforcement efforts and evaluate the Ordinance alone. Accordingly, the court reviews the statute to determine whether, on its face, it abrogates individual rights as plaintiffs' claim.

## I. Procedural Due Process

### A. *The Vagueness Doctrine*

■ The constitutional guarantee of due process embodied in the Fourteenth Amendment requires the legislature to define laws with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). This guarantee provides the public with an understanding of what conduct violates the law and inhibits the police from engaging in arbitrary and discriminatory enforcement. *Id.; see Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972). Challenging the Ordinance under the vagueness doctrine, plaintiffs argue that the section 58.01 requires persons of ordinary intelligence to guess at its meaning. The court disagrees.

■ Section 58.01 sets forth (1) the portion of the citizenry subject to its dictates; (2) the locations at which a violation may occur; (3) the specific actions which constitute violations; and (4) the exceptions to the Ordinance's mandates. First, the curfew

reaches "any minor under the age of eighteen (18) years". San Diego Municipal Code, Art. 8, § 58.01. No reasonable person could doubt which persons fall under the statute's directive. Second, section 58.01 defines the areas in which a violation may occur. The curfew applies "in or upon the public streets, highways, roads, alleys, parks, playgrounds, wharves, docks, or other public grounds, public places and public buildings, places of amusement and entertainment, vacant lots, or other unsupervised places." *Id.* The Ordinance is clear on the location covered.

The thrust of plaintiffs' attack on the statute's language concerns the terms "loiter, idle, wander, stroll, or play." They rely on *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) in support of that position. In *Papachristou,* the Supreme Court struck down on vagueness grounds an ordinance that made it illegal to be a vagrant. *Id.,* 405 U.S. at 156–157, & n. 1, 92 S.Ct. at 840–841, & n. 1. Vagrants were defined as, *inter alia,* "common night walkers ... [and] persons wandering or strolling around from place to place without any lawful purpose or object." *Id.,* 405 U.S. at 156 & n. 1, 163, 92 S.Ct. at 840 & n. 1, 843–844. The Supreme Court found that this part of the Florida ordinance cast an overly broad net in order "to increase the arsenal of the police." *Id.,* 405 U.S. at 165, 92 S.Ct. at 845.

Section 58.01 differs greatly from the ordinance at issue in Papachristou.[1] First, section 58.01 is not an anti-vagrancy statute; it is a curfew for children. The Florida statute was used as a police tool to determine which people could walk outside at night and which individuals could not. *Papachristou,* 405 U.S. at 165–169, 92 S.Ct. at 845–847. In contrast, the San Diego ordinance aims at keeping all unsupervised minors, and only unsupervised minors, from hanging out aimlessly in public after 10:00 p.m. The City Council employed terms with sufficient clarity in section 58.01 to achieve that goal. To "loiter, idle, wander, stroll, or play" in a

public area requires a degree of aimlessness. Under section 58.01, walking to the store to make a purchase or walking to one's car to drive home do not constitute illegal actions. The Ordinance makes illegal the recreational activities of strolling, wandering, idling, playing and loitering.

The court rejects plaintiffs' assertions that the exceptions contained in Section 58.01 broaden the meanings of "loiter, idle, wander, stroll, [and] play." The emergency errand, employment, and school activity exceptions constitute three specific statutory defenses; they illustrate the narrow focus of the curfew's prohibitions. Those exceptions, however, do not expand the meaning of "loiter, idle, wander, stroll, [and] play." Because the ordinance is "readily susceptible" to the construction set forth above, it is this court's duty to uphold the statute. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988). The court need not rewrite the Ordinance "to conform it to constitutional requirements." *Id.*

In fact, the Supreme Court's decision in *Kolender* reflects the propriety of words such as "loiter" and "wander." *Kolender,* 461 U.S. at 353–354, 103 S.Ct. at 1856. In *Kolender,* the Court struck down a statute that defined a misdemeanor as follows:

> Every person ... who loiters or wanders upon the streets or from place to place without apparent reason or business Md who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable person that the public safety demands such identification [is guilty of a misdemeanor].

*Id.,* 461 U.S. at 353 & n. 1, 103 S.Ct. at 1856 & n. 1 (emphasis added). In its decision, the Court ignored the State's prohibition of loitering and wandering and instead, struck the statute based on an intermediate California court's interpretation that required the iden-

---

1. Although the Court in Papachristou set forth its opinion in the language of the vagueness doctrine, the opinion sounds under a theory of substantive due process. *See Papachristou,* 405 U.S. at 163–164, 92 S.Ct. at 843–844 (discussing the virtues of wandering, strolling, and loafing as extolled by Luis Munoz–Marin, Walt Whitman, Vachel Lindsay and Henry David Thoreau).

tification a person provided under the statute to be "credible and reliable." It was that standard the Court found to be vague. *Kolender,* 461 U.S. at 356–362, 103 S.Ct. at 1857–1861. In fact, neither party raised any questions about the terms loitering or wandering in *Kolender. Id.,* 461 U.S. at 361 n. 10, 103 S.Ct. at 1860 n. 10. Plaintiffs' questions regarding the meaning of "legitimate business, trade, profession or occupation," "adult person having care and custody of the minor," "returning directly home" and "emergency errand" are not persuasive. San Diego need not employ words with "mathematical certainty." *Grayned,* 408 U.S. at 110–111, 92 S.Ct. at 2299–2301. It need only provide clarity sufficient for an ordinary person to understand the scope of the illicit conduct. *Id.; Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858. For example, an "adult person having care or custody of the minor" means an individual eighteen years of age or greater under whose supervision the parent or legal guardian has entrusted his or her charge. The words adopted in section 58.01 sufficiently set forth the meaning of the statute such that an ordinary person can recognize what conduct is prohibited.

Based on this reading of the statute, the court finds that section 58.01 gives sufficient guidance to law enforcement to guard against arbitrary and discriminatory enforcement. Nothing in the statute invites police officers to enforce section 58.01 in a discriminatory manner. Thus, unlike the broad and obscure statute in *Papachristou,* the court finds sufficient definitions in the Ordinance's language to be constitutional.

### B. *The Overbreadth Doctrine*

Plaintiffs seek to strike down the ordinance on the ground that it is unconstitutionally overbroad. They claim that the ordinance does not allow San Diego minors to attend political demonstrations, social events that are not school sponsored, and religious functions such as midnight mass, and in so doing, transgresses substantially more con-

2. The court addresses plaintiffs' arguments regarding the rights to travel and move freely in

stitutionally protected activity than is permissible under the overbreadth doctrine.

Under an overbreadth analysis, the court must determine whether the ordinance abridges a substantial amount of constitutionally protected activity. *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The constitutionally protected activities allegedly vitiated by the statute according to plaintiffs are the rights to free speech, free association, free exercise of religion, freedom of movement and freedom to travel.

The overbreadth doctrine applies only to challenges raised under the First Amendment. *See Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Thus, plaintiffs' overbreadth challenges to section 58.01 with regard to "freedom of movement" and the "right to travel" fail as a matter of law.[2] The gravamen of plaintiffs' overbreadth claim is that section 58.01 inhibits minors from exercising their rights to free expression. *See Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 799, 104 S.Ct. 2118, 2125–2126, 80 L.Ed.2d 772 (1984).

1. *First Amendment Guarantees of Free Speech*

Plaintiffs challenge the Ordinance on the ground that it violates the guarantee of free speech to minors. However, section 58.01 does not directly curtail the First Amendment rights of minors. The ordinance only regulates conduct; it prohibits minors from engaging in several recreational activities in public after 10:00 p.m. Although section 58.01 may indirectly impinge upon some minors' First Amendment freedoms, the court finds that it does not "impose a disproportional burden upon those engaged in First Amendment activities." *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 703–704, 106 S.Ct. 3172, 3175–3176, 92 L.Ed.2d 568 (1986); *see also Minneapolis Star & Tribune Co. v.*

the equal protection analysis.

*Minnesota Comm'r of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). The curfew applies equally to all minors within the City of San Diego and merely restrains a minor, when unsupervised by an adult, from engaging in five specified recreational activities after 10:00 p.m.

Nor does section 58.01 regulate conduct with an expressive element. *See Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539–2540, 105 L.Ed.2d 342 (1989). Neither loitering, idling, strolling, wandering or playing connote expressive activities; they are recreational actions. "Any impingement on speech is incidental to the 'nonspeech' purposes furthered by the ordinance. When 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element justifies the incidental limitations on First Amendment freedoms." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). The government interests in protecting juveniles from the dangers posed by unsupervised late night activities and protecting society from the dangers presented by unsupervised juveniles hanging out in the nighttime are sufficiently important to override the incidental limitations on expression. Because these important state interests do not relate in any way to the suppression of free expression, the court considers the curfew's incidental effects on free speech to be constitutionally permissible. *See O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

■ In addition, to the extent that the curfew implicates a narrowing of minors' freedom of speech, the court finds that limited nature of the restriction valid as to time, place, and manner. Such restrictions are valid when they are (1) imposed without reference to the content of speech; (2) narrowly tailored to meet a significant government interest; and (3) structured to allow sufficient alternative channels for communication. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–3069, 82 L.Ed.2d 221 (1984); *accord Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–2754, 105 L.Ed.2d 661 (1989).

The City of San Diego maintains an interest in controlling access to the public forum. *See Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). The ordinance reaches this goal in a content-neutral manner; any effect the curfew imposes on minors' ability to engage in free expression occurs without reference to the intended message. In addition, section 58.01 meets the "narrow tailoring" prong because it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 799, 109 S.Ct. at 2758 (quotation and citation omitted). The government's interest in protecting unsupervised juveniles from the dangers attendant to late night urban life would be curtailed significantly absent section 58.01. Finally, the ability of any parent or guardian to supervise or entrust their charge to the supervision of any adult for the purposes of engaging in political expression during the curfew's hours leaves open to juveniles abundant avenues for communication. A minor can freely exercise his or her First Amendment freedoms at any time prior to 10:00 p.m.; after this hour, the City imposes the limited restriction of adult supervision. The City of San Diego may impose such restrictions without violating the Constitution's guarantee of free expression.

### 2. First Amendment Guarantees of Free Association

■ There is no "generalized right of societal association." *Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989). Nevertheless, a statute that denies individuals the right to assemble for the purposes of exercising First Amendment rights of free speech and religion is subject to the highest scrutiny. *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 3249–3250, 82 L.Ed.2d 462 (1984). However, section 58.01 affects indirectly minors' associational rights.

The curfew restricts minors, if unsupervised by an adult, from assembling in public for recreational purposes after 10:00 p.m. Supervision by an adult allows a minor to fully enjoy the public forum after 10:00 p.m.

Thus, considering (1) the limited nature of this burden, (2) the fact that minors can associate with each other in any private forum at any hour with or without adult supervision, (3) the nonspeech focus of the ordinance, and (4) the reasonable restriction of time, place, and manner, the court finds that the associational restrictions interposed by the curfew do not transgress the Constitution's mandates.

### 3. *First Amendment Guarantee to Free Exercise of Religion*

█ Section 58.01 does not regulate the religious exercise of any minor in San Diego. Under the terms of the ordinance, a minor may travel directly to and from any religious activity at any hour. The curfew makes illegal the acts of hanging out in public following any participation in such activity; this proscription does not implicate the Free Exercise Clause of the First Amendment.

█ The court reviews challenges brought under the Free Exercise Clause of the First Amendment under the standard articulated in *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793–1794, 10 L.Ed.2d 965 (1963); *accord Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir.); *cert. denied*, 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994). *Sherbert* applies a strict scrutiny analysis to any government action that imposes a substantial burden upon an individual's free exercise of religion. *Id.*, 374 U.S. at 403, 83 S.Ct. at 1793–1794; *Vernon*, 27 F.3d at 1393. To reach this test, however, the individual must demonstrate that the State's actions burdens the practice of his or her religion "by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Graham v. C.I.R.*, 822 F.2d 844, 850–851 (9th Cir.1987), *aff'd sub nom., Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–2149, 104 L.Ed.2d 766 (1989).

Section 58.01 does not impose a substantial burden upon plaintiffs' free exercise of religion. The curfew does not preclude any minor from practicing any religion; plaintiffs fail to identify any religious activity in which they engage which requires, as a central tenet of the faith, unsupervised minors to "loiter, idle, stroll, wander, or play" in a public place at night. Any inconvenience the burden imposes, such as restricting a minor's ability to recreate without adult supervision outside of a church after midnight mass, the court considers far less than substantial. Alternatively, the court finds the Ordinance to be a reasonable time, place, and manner restriction. *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 651–655, 101 S.Ct. 2559, 2565–2568, 69 L.Ed.2d 298 (1981). Consequently, the court concludes that Section 58.01 does not violate a minor's rights under the Free Exercise Clause of the First Amendment.

## II. Substantive Due Process

### A. *The Privacy Rights of Parents*

█ Plaintiffs argue that section 58.01 violates the fundamental right of parents to direct their children's upbringing and to preserve familial autonomy against unnecessary governmental intrusion. Although parents possess a constitutional right to direct their children's upbringing, that right is not absolute. *See Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 573–574, 69 L.Ed. 1070 (1925); *Wisconsin v. Yoder*, 406 U.S. 205, 213–215, 92 S.Ct. 1526, 1532–1533, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 649–652, 92 S.Ct. 1208, 1211–1213, 31 L.Ed.2d 551 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 164–166, 64 S.Ct. 438, 441–442, 88 L.Ed. 645 (1944). The State maintains an interest in protecting the "moral, emotional, mental, and physical welfare of the minor, [as well as] the best interests of the community." *Stanley*, 405 U.S. at 652, 92 S.Ct. at 1213. Clearly, the State as *parens patriae* may set restrictions regarding children's labor and mandate school attendance. *Prince*, 321 U.S. at 166–168, 64 S.Ct. at 442–443.

■ Considering the present day problems and dangers associated with urban life, the State has a substantial interest in protecting the physical and mental welfare of minors and in guaranteeing public safety and order. The curfew ordinance does not unduly burden a parent's right to raise his or her child in an autonomous setting. Rather, it represents a minimal restriction on the parents' ability to allow their child to take up certain leisurely activities in public in the middle of the night. Parents can continue to allow their children to attend myriad functions after 10:00 p.m.; the statute only prohibits the unsupervised recreational acts of idling, strolling, playing, wandering and loitering.

In addition, the exceptions in section 58.01 allow a parent to entrust his or her child to the supervision of an adult of at least eighteen years. Thus, considering the legitimate limitations the State may impose on parental autonomy in the rearing of children, and reviewing the important governmental interests such as protecting children from the dangers presented by hanging out in the streets without any adult supervision in the nighttime and protecting society from the dangers posed by unsupervised minors during these late hours, the court finds that section 58.01 embodies and furthers the constitutionally recognized goals of protecting the welfare of children and society as a whole. Therefore, the City's legitimate interests greatly outweigh the limited intrusions upon parental autonomy interposed by section 58.01.

## III. Equal Protection

Plaintiffs claim that section 58.01 violates the equal protection guarantee of the Fourteenth Amendment. (*Complaint*, ¶ 46). Under plaintiffs' theory, the City's decision to impose a restriction on persons under the age of eighteen without imposing the same restrictions on all persons runs afoul of the constitutional guarantee to equal protection.

■ The Equal Protection Clause of the Fourteenth Amendment mandates that "No State shall ... deny to any person within its jurisdiction the equal protection of the law." U.S. CONST., amend XIV. That command requires the State to treat alike all persons similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–3254, 87 L.Ed.2d 313 (1985). Because the Ordinance distinguishes between two classes of individuals, individuals below eighteen years of age and those eighteen and older, equal protection analysis is appropriate.

■ First, the court must determine through which lens of equal protection analysis it must view the ordinance in question. As a general rule, courts presume the validity of all legislation and sustain classifications that are rationally related to a legitimate state interest. *Id.* Certain classifications, however, warrant heightened scrutiny by the reviewing court. Statutes that classify by race, national origin and alienage garner the highest level of judicial scrutiny and are upheld only upon a showing that they are narrowly tailored to serve a compelling state interest. *McLaughlin v. Florida*, 379 U.S. 184, 192, 85 S.Ct. 283, 288–289, 13 L.Ed.2d 222 (1964); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). Similarly, gender classifications merit heightened review and fall except upon a showing that the classification substantially serves a important state interest. *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723–724, 102 S.Ct. 3331, 3335–3336, 73 L.Ed.2d 1090 (1982).

■ Age distinctions drawn by the state fall within the ambit of the lowest level of scrutiny: the rational basis test applies. *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *see also Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–2567, 49 L.Ed.2d 520 (1976). The rational basis test requires that the court review the statute and uphold the legislation if it is rationally related to a legitimate government interest. *City of Cleburne*, 473 U.S. at 442–443, 105 S.Ct. at 3255–3256. Plaintiffs, however, do not argue that the Ordinance merits heightened scrutiny based on the age classification; they claim that section 58.01 infringes upon a minor's fundamental rights.

The abridgement of an individual's fundamental rights by a statute requires that the court subject the legislation to strict scrutiny. *See e.g., Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 626–628, 89 S.Ct. 1886, 1889–1890, 23 L.Ed.2d 583 (1969). Plaintiffs argue that section 58.01 curtails minors' freedom of movement and right to travel, in contravention of the Fourteenth Amendment. The court disagrees.

The juvenile curfew does not implicate any fundamental rights possessed by juveniles. Adults possess rights, deemed fundamental, that minors do not. *See Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, ——, 115 S.Ct. 2386, 2391, 132 L.Ed.2d 564 (1995) ("liberty in its narrow sense"); *McKeiver v. Pennsylvania,* 403 U.S. 528, 549–551, 91 S.Ct. 1976, 1988–1989, 29 L.Ed.2d 647 (1971) (right to jury trial); *Prince v. Massachusetts,* 321 U.S. 158, 168–169, 64 S.Ct. 438, 443–444, 88 L.Ed. 645 (1944) (greater restrictions regarding child labor). Fundamental liberties are those liberties "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if [they] were sacrificed." *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The right to loiter, idle, wander, stroll or play late at night in an urban setting represents one of those liberties that is not coextensive between adults and minors. Although our concept of ordered liberty as embodied in the Fourteen Amendment contemplates that adults may move about freely in the public arena, *United States v. Wheeler,* 254 U.S. 281, 293, 41 S.Ct. 133, 134, 65 L.Ed. 270 (1920); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed.2d 110 (1972), these historical ideas do not extend to children. "Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, i.e., the right to come and go at will." *Vernonia School Dist.,* 515 U.S. at ——, 115 S.Ct. at 2391. The conclusion that minors possess a lesser right to free movement than adults corresponds with society's recognition that minors are more vulnerable to society's dangers than adults and that juveniles lack the ability "to make critical decisions in an informed mature, manner." *Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979). Consequently, the court finds that the minors' circumscribed liberty interest is subject to some lesser degree of scrutiny, such as a showing by the State that the statute at issue is substantially related to an important governmental interest. *See Mississippi University for Women v. Hogan,* 458 U.S. at 723–724, 102 S.Ct. at 3335–3336. Applying this intermediate test to the ordinance at hand, the court finds that Section 58.01 substantially serves the City's interests in protecting (1) children from the dangers present from unsupervised late night recreation in public places and (2) society from the problems posed by unsupervised juveniles at night.

Nevertheless, like the court in *Qutb v. Strauss,* 11 F.3d 488, 492 (5th Cir.1993), *cert. denied,* 511 U.S. 1127, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994) (upholding the Dallas curfew ordinance of minors), the court will review the Ordinance under the most powerful judicial lens of strict scrutiny. Under strict scrutiny, the City must demonstrate that the ordinance is narrowly drawn to further a compelling state interest. *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. Defendants meet their burden. The City indicates that the curfew ordinance furthers the State's interest in keeping unsupervised juveniles from the harms attendant to city life at night, as well as reducing late night juvenile crime. As the Supreme Court recognized in *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), some minors lack the maturity of adults, and hence, are more susceptible to the dangers interposed by society and peer pressure. *Id.,* 443 U.S. at 633–636, 99 S.Ct. at 3042–3044. San Diego has an interest in limiting the presence of unsupervised minors in public in the late evening; its interest stems both from a desire to protect minors from the dangers attendant to city living as well as protect other citizens from the problems presented by unsupervised youths spending their nights in

924

the streets. The court finds these interests compelling.

Section 58.01 is narrowly drawn to serve this interest; its tailoring demonstrates that it was not interposed for an illegitimate purpose. First, the curfew only limits the activities of unsupervised minors. The supervision of a juvenile by his parent, guardian or any adult to whom the parent or guardian has entrusted the child, withdraws the minor from the curfew's prohibitions. Second, the statute precludes the recreational activities of hanging out in the streets after 10:00 p.m. It does not restrict a minor from driving after 10:00 p.m. or traveling directly to or from any recreational activity. Only the recreational acts of loitering, strolling, idling, wandering, and playing in public are forbidden. Children moving directly through the public streets are less likely to become targets of crime or fall prey to peer pressure to become proponents of mischief. In addition, the curfew recognizes and protects several legitimate interests of minors, such as attending school functions and work. Finally, the statute allows minors to meet and engage in any recreational activity, even if they are unsupervised, as long as they engage in such activity in a non-public forum.

Contrary to plaintiffs' claims, the ordinance does not limit juveniles to be outside their homes after 10 p.m. in only four limited circumstances. The statute limits its reach to "public streets, highways, roads, alleys, parks, playgrounds, wharves, docks, or other public grounds, public places and public buildings, places of amusement and entertainment, vacant lots, or other unsupervised places." SAN DIEGO MUNICIPAL CODE, ART. 8, § 58.01.

Unlike the ordinance struck down in *Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir.1981), section 58.01 does not prohibit minors "from attending associational activities such as religious or school meetings, organized dances, and theater and sporting events" or traveling to and from such activities. *Id.*, 658 F.2d at 1072. Consequently, even under the most powerful lens of judicial review, strict scrutiny, the court concludes that section 58.01 does not offend the Fourteenth Amendment's guarantee of Equal Protection. To the contrary, the curfew comports with the City's prerogative to structure its legal system "to account for children's vulnerability [and] concern[,]" *Bellotti*, 443 U.S. at 635, 99 S.Ct. at 3044, and to further the City's compelling interests in securing juvenile and social welfare.

## IV. The Fourth Amendment Challenge

■ Plaintiffs also challenge the ordinance under the Fourth Amendment. Specifically, plaintiffs contend that the curfew requires young adults to carry identification and display it on demand to a police officer who inquires of their age in violation of the Fourth Amendment. The court disagrees.

The Fourth Amendment to the United States Constitution mandates that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons to be seized.

U.S. CONST., amend IV. This amendment is made applicable to the states through the Fourteenth Amendment. *Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 1441–1442, 4 L.Ed.2d 1669 (1960). Section 58.01 does not authorize any officer to search or seize any person in violation of the Fourth Amendment.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court discussed the contours of the Fourth Amendment with regard to police questioning of individuals suspected of breaking the law. The Court held that a police officer's investigation of a person's activity in a particular area constituted a limited intrusion. *Id.*, 392 U.S. at 16–18, 26–28, 88 S.Ct. at 1877–1878, 1882–1883. In this regard, the Court found that such a limited intrusion could be predicated upon a reasonable suspicion that the detained person was involved in an illegal activity; a "reasonable suspicion" requires a showing by the officer that she relied upon specific and articulable facts which support the inference that (1) some criminal activity

was occurring, and (2) the detained individual had been involved in such activity. *Id.*, 392 U.S. at 18–19, 88 S.Ct. at 1878–1879; *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–2641, 61 L.Ed.2d 357 (1979); *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–1326, 75 L.Ed.2d 229 (1982.) Not only must the officer subjectively entertain this specific and articulable suspicion, the suspicion itself must meet the standard of objective reasonableness. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–2579, 45 L.Ed.2d 607 (1975).

Nothing in the curfew ordinance relieves the officer of the need to predicate a stop on such a "reasonable suspicion." An officer may detain individuals pursuant to section 58.01 based on myriad factors that support an inference that the person is a minor who is loitering in a public area. If the officer has probable cause to belief that the individual is under 18 and is loitering, idling, wandering, strolling or playing in violation of the curfew's mandate, the officer could lawfully arrest the individual for violation of section 58.01, in which case, the police contact a parent of the minor.

Moreover, nothing in the statute curtails a person's ability to challenge the validity of a police officer's actions that resulted in a citation under this ordinance pursuant to California Penal Code section 1538.5.[3] The court finds no basis to invalidate section 58.01 based on the Fourth Amendment.

## V. STANDING

Finally, the court addresses defendants attempt to avoid adjudication of this case under the standing doctrine. Defendants argue that plaintiffs lack standing to raise the issues herein, thereby depriving the court of jurisdiction to reach the merits. The court disagrees.

■ To establish standing sufficient to allege a case or controversy under Article III of the Constitution, a plaintiff must establish

(1) injury in fact, *i.e.*, the challenged statute threatens to invade a legally protected interest; (2) causation, i.e., the injury "can be traced to the challenged action of the defendant"; and (3) redressability, i.e., a favorable decision from the court will alleviate the injury. *Northeastern Florida Chapter of Assoc'd General Contractors v. City of Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). At a minimum, plaintiffs Asha Settimo, Michael Evans and Terra Lawson–Remer meet these requirements.

■ Ms. Lawson–Remer is a seventeen year old high school student who regularly participates in recreational and social activities after 10:00 p.m. (*Pl.Exh. 13*). Ms. Settimo is a fifteen year old freshman at Grossmont College. (*Pl.Exh. 14*). She too engages in recreational and social activities during curfew hours. *Id.* Settimo was arrested for a curfew violation on July 10, 1995. Mr. Evans is the father of a seventeen year old high school student. (*Pl.Exh. 15*). He allows his daughter to participate in social and recreational activities during curfew hours; his daughter has been detained under Section 58.01 for a curfew violation. *Id.* The court finds that all three of these plaintiffs have demonstrated that they can challenge the curfew ordinance. All three maintain constitutional freedoms which are restricted by ordinance; a favorable decision by the court would lift those restrictions.[4] Consequently, the court possesses jurisdiction to reach the merits of plaintiffs' challenge.

## CONCLUSION

Neither party disputes any material facts surrounding the imposition of San Diego Municipal Code section 58.01. Accordingly, summary judgment presents the appropriate disposition of this case. FED.R.CIV.P. 56. After considering the papers submitted by the parties and *amicus curiae*, the court finds that the defendants are entitled to summary judgment. In particular, the court

---

3. California Penal Code section 1538.5 allows for individuals to challenge evidence obtained by the police in violation of a person's Fourth Amendment rights.

4. Because the court finds that these three plaintiffs possess standing sufficient to raise the constitutional challenges discussed herein, it need not and does not address the issue of standing regarding the remaining plaintiffs.

finds that the Ordinance does not abridge plaintiffs' rights as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Consequently, the court denies plaintiffs' motion for summary judgment and grants defendants' motion for summary judgment.

IT IS SO ORDERED.